(November 19, 1910.)

## C. D. BELL, Respondent, v. FRED M. SHIELDS, Administrator of the Estate of M. J. SHIELDS, Deceased, Appellant.

[111 Pac. 1076.]

OPTION TO PURCHASE LAND—STANDING TIMBER—SALE OF—LIABILITY OF SELLER—BREACH OF CONTRACT—IMPOSSIBILITY OF PERFORMANCE—CREATED BY PARTY.

(Syllabus by the court.)

1. Where S. has an option to purchase certain lands, and sells the standing timber thereon to B. and thereafter procures the title to said land to be conveyed to N., and contracts with N. to protect S. in his contract with B., without B.'s knowledge or consent, and thereafter N. sells the land to D. & D., who are innocent purchasers, without reserving the rights of B. to take such timber from said land, *held*, that S. is liable to B. for whatever damages he sustained by being prevented from removing the timber from said land.

2. Where one party to a contract voluntarily places himself in a position whereby he is unable to carry out the provisions of his contract, he is as liable for a breach thereof as though he had deliberately refused to comply with its provisions.

APPEAL from the District Court of the Second Judicial District for Latah County. Hon. Edgar C. Steele, Judge.

Action to recover damages on contract for failure to comply with its terms. Judgment for plaintiff. *Affirmed.*

Forney & Moore, for Appellant, cite no authorities.

C. J. Orland, for Respondent.

After Bell had expended a large amount of money in carrying out the terms of the agreement, it had then become an irrevocable license, and if violated by Shields would subject him to any damages which Bell may have suffered. (*Rhodes v. Otis*, 33 Ala. 578, 73 Am. Dec. 439; *Beatty v. Gregory*, 17 Iowa, 109, 85 Am. Dec. 547; *De Graffenried v. Savage*, 9 Colo. App. 131, 47 Pac. 902; *Bowman v. Bowman*, 35 Or. 279, 57 Pac. 546.)

If this contract is a license, it is a license coupled with an interest, and is not revocable, and if the licensee is prevented from receiving that for which he contracted, by any act of the licensor, then the licensor is liable for any damages which the licensee has sustained. (*Snowden v. Wilas*, 19 Ind. 10, 81 Am. Dec. 370; *Levy v. Louisville Gunning System*, 121 Ky. 510, 89 S. W. 528, 1 L. R. A., N. S., 359.)

In order to constitute a novation, all the parties must agree to the change and terms. (21 Am. & Eng. Ency. of Law, 2d ed., 666.)

A party who puts himself in a position so that he is unable to carry out the conditions of his contract is as liable for a breach as though he deliberately refused to comply with it. (9 Cyc. 639.)

SULLIVAN, C. J.—This is an action to recover damages for the alleged breach of a contract for the sale of standing timber on land in Latah county. The case was tried by the court with a jury, and the jury returned a verdict for the plaintiff for the sum of $660, and judgment was entered for that amount. A motion for a new trial was denied, and the appeal is from the judgment and order denying a new trial.

It appears from the record that on the 28th day of February, 1906, the respondent and M. J. Shields, who died since the trial of this action and is represented by the appellant, his administrator, entered into a contract whereby Shields sold to the plaintiff 500,000 feet of tamarack, fir and pine timber at the agreed price of one dollar per thousand feet stumpage, whereby the respondent was given two years

from the date of said contract in which to remove said timber. It was further agreed that the respondent might at his option cut and remove all the tamarack, fir and pine timber standing and growing upon said land which was merchantable saw timber at the same price per thousand feet. By the terms of said contract, the respondent was given the right to go upon said land and make all necessary roads and improvements required in order to get out said timber, and was permitted to place a sawmill on said land at such place as he might select, and was authorized by said contract to use said land, or any part thereof, for all purposes necessary in the cutting, hauling and manufacturing said timber into marketable lumber. In pursuance of that contract, the respondent proceeded to cut and manufacture into lumber about 100,000 feet of said timber. It appears that said Shields, at the time he entered into said contract with the respondent, had an option to purchase said land and did not hold the title to the same. During the continuance of the contract with respondent, Shields sold said land to one Nolan and procured a deed to be made directly to said Nolan, with no provision in the deed protecting said respondent's rights. This was done without respondent's knowledge or consent. Shields, however, had a contract with Nolan that he would protect respondent in his said contract. Nolan thereafter sold said land to Driskel and Dixon without reserving the rights of respondent to cut said timber and without their having any knowledge of the Bell and Shields contract. Driskel and Dixon, soon after purchasing said land, began an action against the respondent to stop him from cutting more of said timber, and obtained a perpetual injunction preventing him from removing any timber whatever from said land.

The evidence introduced on the trial is substantially in accordance with the facts above stated, and under that state of facts it is contended that the defendant, as administrator of the estate of said M. J. Shields, is not liable to respondent for any damages he sustained. It is contended under the facts of this case that Nolan, by selling the premises in controversy, converted the interests of the plaintiff in the common prop-

erty or revoked the license of the plaintiff to go upon the premises and cut the timber, and that he is the one who has caused the damage to the respondent, and is liable therefor.

It appears that the contract or sale of the land by Shields to Nolan was made in December, 1906, and that the respondent had no knowledge of it until about March, 1907. While the evidence shows that the respondent and Nolan had several conversations in regard to the timber on said land, he made no contract with him in regard to the same. The respondent thereafter saw Shields, and stated to him that, he did not like Nolan's actions in regard to the matter, and it looked to him as if Nolan would try to beat him out of the timber, and informed Shields that he had a contract with him for it and would expect him (Shields) to carry out the contract. Shields replied that that was all right: "You look to me for it." Mr. Shields testified on the trial as follows: "And I told him [Bell] that Mr. Nolan had nothing at all to do with that timber—that any part of this timber that his contract would take was never transferred to Nolan, and that I would deal with him on that and see that he got everything as per his contract." The record clearly shows that the respondent did not look to Nolan to carry out said contract in the place of Shields, but it does show that he looked to Shields all the time. In the contract between Shields and Nolan whereby Nolan agreed to protect Bell, there was no substitution of the agreement between Shields and Nolan for the contract between Shields and Bell. Bell did not agree to look to Nolan for protection under his contract with Shields, did not agree to accept Nolan in place of Shields to carry out the Shields-Bell contract. There was no novation. After the controversy arose, Shields informed the respondent that he would deal with Nolan in regard to the matter and see that respondent got everything that he was entitled to under said contract. After Shields had sold to Nolan, Bell paid Shields the money claimed to be due him under the contract for timber. Shields did not look to Nolan for pay for the timber but to Bell. While Nolan agreed with Shields to protect the rights of Bell to remove said timber, Bell was no party to that contract, and

did not agree to accept Nolan in the place of Shields. It was within Shields' power, when he procured the conveyance to be made to Nolan of the land on which said timber was situated, to have Bell's rights reserved in such conveyance, and had he done so, and Nolan or his grantees had then interfered with Bell in his removal of such timber, Bell would have had his remedy against them and not against Shields. Shields knew that the contract with Bell was not acknowledged, and could not be recorded unless proceedings were had under the provisions of secs. 3139 to 3142, Rev. Codes. By selling the land to Nolan in the manner he did, without reserving the rights of Bell in the deed, he placed it in the hands of Nolan to dispose of the land to an innocent purchaser without notice, which Nolan proceeded to do at the first opportunity and without informing the purchaser of any contract or claim of Bell to the timber. Such purchasers, immediately upon learning that Bell was cutting timber, commenced an action to enjoin him, and recovered judgment and a perpetual injunction against him. Shields thus put himself in a position voluntarily so that he was unable to carry out the provisions of said contract with Bell. Under that state of facts he is as liable for a breach of the contract as though he had deliberately refused to comply with it. (9 Cyc. 639.) Under the facts as they appear in the record, the administrator, under the contract between Shields and Nolan, would have his remedy against Nolan in case he failed to protect Bell as per his agreement with Shields.

We have examined the several errors assigned and find no reversible error in the record. The judgment must therefore be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Ailshie, J., concurs.